IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT H. WEINBERG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC., a California corporation,<br><br>Defendant. | CASE NO:<br><br><br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Robert H. Weinberg ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to him and on information and belief as to all other matters, by and through undersigned counsel, brings this Class Action Complaint against defendant Nissan North America, Inc. ("Defendant" or "Nissan").

## NATURE OF THE ACTION

1. 2013–2014 Nissan Altima vehicles ("Subject Vehicles") contain defective continuously variable automatic transmissions ("CVT") that cause shuddering, hesitation, stalling, unusual noises, and ultimately, premature transmission failure. The CVTs pose a significant safety risk. Momentum of the Subject Vehicle is suddenly lost, the rate of speed drops or the vehicle stalls, and the brake lights do not illuminate. The defect is especially dangerous because it manifests when the driver presses the accelerator. Just when the driver attempts to accelerate, nothing occurs, which is sometimes followed by an unexpected surge of power. The CVTs increase the risk that the driver will lose control and cause a collision.

2. When owners of Subject Vehicles seek repair of their defective transmissions, they are routinely informed that the transmission requires replacement, at a cost upwards of $3,000. With the replacement, the vehicles are then equipped with another defective CVT, and the cycle repeats.

3. Nissan knew the CVTs were defective in this way, were prone to shuddering and eventual premature failure, yet omitted these material facts from Plaintiff and other Class members. Nissan misrepresented the risk to safety the Subject Vehicles pose to occupants and the public. Nissan knowingly engaged in omissions of material facts and false and misleading representations regarding the performance of CVTs in the Subject Vehicles.

4. The defective CVT included in the Altima purchased and leased by Plaintiff and other Class members did not perform as advertised, as promised, and as warranted. As a result of Nissan's unfair, deceptive, and fraudulent conduct, Plaintiff and the other Class members received a car worth less than as represented and less than what they paid for when purchasing their Altimas. Plaintiff and Class members have suffered injury in fact and incurred damages.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from Defendant, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

6. Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the Northern District of Illinois.

## PARTIES

7. Plaintiff Robert H. Weinberg, is a citizen of the state of Illinois and resides in Lake County, Illinois. Plaintiff purchased a new 2013 Nissan Altima SL vehicle from Rosen Nissan in Gurnee, Illinois in October of 2012. Prior to purchasing the vehicle, Plaintiff reviewed Nissan's website. Plaintiff was exposed to Nissan's misrepresentations regarding the "smooth" CVT in the Altima. Plaintiff has experienced problems with the transmission on his 2013 Altima shuddering during his ownership of the vehicle. Plaintiff attempted to have his Altima repaired by an authorized Nissan dealership during the warranty period. Nissan failed to correct the problem, and Plaintiff continues to experience the complained-of issues with the CVT on his 2013 Altima. As a result, Plaintiff received less than what he paid for his Altima.

8. Defendant is a California corporation and its principal place of business is located in Franklin, Tennessee. Defendant is the North American subsidiary of Nissan Motor Co. Defendant designed, manufactured, marketed, distributed, leased, and sold, through its authorized dealers and distributors, the Subject Vehicles in the United States to Plaintiff and the other Class members.

## FACTUAL BACKGROUND

*The Defective 2013–2014 Nissan Altima CVT*

9. The Subject Vehicles are equipped with CVTs designed and manufactured by Jatco, Ltd., a majority-owned subsidiary of Nissan that specializes in the design and manufacture of transmissions. Unlike conventional automatic transmissions with planetary gears, CVTs employ two pulleys of adjustable diameter that continuously adjust the gear ratio of the transmission in response to the operator's inputs.

3

10. The CVTs Nissan used in the Subject Vehicles are defective. These transmissions fail to deliver the smooth operation Nissan promised. Instead, they frequently exhibit a shuddering sensation that is undesirable and detracts from the Subject Vehicles' performance. They eventually fail to operate altogether. Owners of the Subject Vehicles often experience the same defect variably described as a hesitation, stalling, shudder, unusual noises, and premature transmission failure.

11. Carcomplaints.com, a website that compiles consumer complaints, has advised that consumers should "avoid [the 2013 Nissan Altima] like the plague," due to the high number of complaints regarding vibration and transmission failure related to the CVT, the most commonly complained-of defect.[1]



12. As of December 8, 2017, The National Highway Traffic Safety Administration ("NHTSA") has received 223 complaints regarding the transmission on the 2013 Nissan Altima and 77 complaints regarding the transmission on the 2014 Nissan Altima. Almost all of these complaints regard the CVT's problems with jerking, stalling, shuddering, hesitating, or failing prematurely. A sampling of these complaints includes:

- "TRANSMISSION HAS FAILED ABRUPTLY IN NISSAN ALTIMA 2013 AT 79K MILES ALMOST ENDING IN A COLLISION IN MID INTERSECTION. NISSAN SAYS IT'S PAST WARRANTY AND WILL NOT REPLACE. I'M ON THE HOOK FOR $3800 FOR A FAULTY TRANSMISSION THAT COULD'VE CAUSED A DEADLY ACCIDENT. MY KIDS WERE IN THE CAR AT THE TIME. . . ." (NHTSA ID Number 11040232)

- "MY 2013 NISSAN ALTIMA, WHICH WAS PURCHASED NEW HAS HAD ISSUES WITH THE CVT TRANSMISSION SINCE IT WAS PURCHASED. IN

---

[1] https://www.carcomplaints.com/Nissan/Altima/2013/transmission/transmission_stopped_working.shtml

9/2014 AT 42K MILES THE TRANSMISSION FAILED AND WAS REPLACED. NOW IN 9/2017 I AM BEING TOLD BY NISSAN THAT THE TRANSMISSION THAT WAS REPLACED BY THEM IN 2014 IS ALSO BAD AND NEEDS TO BE REPLACED AT A COST TO ME OF $4,100.00. WHO CAN AFFORD A $4,100 REPAIR ON A VEHICLE THAT IS STILL BEING PAID FOR MONTHLY, AND WHY IS IT THE CONSUMER'S FAULT THAT NISSAN NA IS MAKING AND SELLING FAULTY, UNSAFE PRODUCTS? NISSAN NA KNOWS OF THE ONGOING ISSUES WITH THESE CVT TRANSMISSIONS, BUT CHOSES TO NOTHING TO RECTIFY THE ISSUES. MY VEHICLE WILL NOT PULL AND MAKES A WHINING NOISE WHILE I AM DRIVING. THIS IT THE SAME ISSUE THAT OCCURRED IN 2014. WHILE I WAS IN MOTION ON A MAJOR INTERSTATE THE VEHICLE BEGAN TO LOSE POWER, SPUDDER AND JERK, AND DROPPED DOWN TO ABOUT 10-15 MPH. IT WAS A HORRIFYING EXPERIENCE TO BE IN THE MIDDLE OF THE INTERSTATE TRAVELING AT 60 MPH, AND ALL OF A SUDDEN START TO LOSE SPEED. I WAS FINALLY ABLE TO GET THE VEHICLE TO THE SHOULDER SAFELY. THESE VEHICLES ARE UNSAFE TO BE DRIVEN."

- "MY 2013 NISSAN ALTIMA IS STALLING WHEN BEING SHIFTED INTO REVERSE OR DRIVE. THE FIRST INSTANCE THAT THIS HAPPENED, I WAS DRIVING AND SLOWING DOWN AT AN INTERSECTION. THE RPM'S DROPPED, THE CAR SHOOK A LITTLE AND IT DIED. I HAD TO PUT IT INTO PARK AND RESTART. I WAS ABLE TO MAKE IT ABOUT 2 MILES AWAY WHEN IT DID IT AGAIN, THIS TIME ON A RESIDENTIAL STREET THANKFULLY. I TRIED ABOUT 5 TIMES AND WAS NOT ABLE TO MOVE THE VEHICLE, EVERY TIME I SHIFTED IT INTO DRIVE, IT STALLED. . . ." (NHTSA ID Number 11048230)

- "I WAS STOPPED AT A RED LIGHT AND THE CAR JUST TURNED ITSELF OFF. I TURN IT BACK ON AND AS SOON AS I PUT IT IN DRIVE IT TURNS ITSELF OFF AGAIN. I FINALLY GET IT GOING AND GET TO MY DESTINATION WITHOUT ANYMORE PROBLEMS. THE NEXT DAY I GO TO START IT AND AS SOON AS I PUT IT IN DRIVE THE CAR TURNS ITSELF OFF, I CONTINUE TO TRY TO GET IT GOING BUT NEVER DID. I GET IT TOWED TO THE NISSAN DEALERSHIP AND THEY SAID THE ENTIRE TRANSMISSION NEEDS TO BE REPLACED. I GET THE TRANSMISSION REPLACED. NOW 3 MONTHS AFTER I GET A BRAND NEW TRANSMISSION IT'S DOING THE SAME THING AGAIN. I START THE CAR GO TO PUT IT IN DRIVE AND IT TURNS OFF." (NHTSA ID Number 11046444)

*Nissan's Deceptive Marketing of the CVT in Subject Vehicles*

13. Contrary to the danger and poor performance of the Subject Vehicles, which are being experienced by thousands of consumers, Nissan touted the CVT included in the Subject Vehicles as a major selling point. In particular, Nissan focused on the CVT's supposed "smoothness."

14. In its press kit for the 2013 Altima, Nissan boasted that the vehicle included "a next-generation Xtronic CVT that takes Nissan's two decades of Continuously Variable Transmission leadership into a new dimension of smooth operation and fuel efficiency." Nissan also described the transmission as "designed for fluid-feeling performance."[2] Similarly, in its press kit for the 2014 Altima, Nissan advertised improved "drivability and responsiveness" owing to the CVT and describes the CVT as "smooth."[3]

15. In a magazine ad for the 2013 Altima, Nissan prominently featured the "all-new CVT," relying on the CVT as one of the major selling points of the vehicle:

---

[2] http://nissannews.com/en-US/nissan/usa/presskits/2013-nissan-altima
[3] http://nissannews.com/en-US/nissan/usa/channels/Altima-Sedan/presskits/us-2014-nissan-altima-sedan-press-kit




16. Nissan even produced and published several videos dedicated toward communicating the supposed smoothness and "seamlessness" of the CVT used in the Subject Vehicles.[4]

*Nissan's History of Transmission Defects*

17. At the same Nissan was touting the CVT to the car-buying public, Nissan was well aware of the problems it had long had with its CVTs, and attempted countermeasures in an effort to end the quality problems associated with their CVTs. In December 2013, Nissan CEO Carlos Ghosn announced that Nissan would increase oversight of Jatco, noting that expensive problems with Jatco's CVTs were negatively impacting Nissan's bottom line.[5]

18. In 2009, Nissan took the unusual measure of extending the warranty on the CVT to ten years or 120,000 miles for a large number of Nissan vehicles, including: 2003-2007 Nissan Muranos, 2007-2010 Nissan Sentra, Versa 1.8SL, Maxima, Altima, Altima Coupe, and Altima Hybrid vehicles, 2008-2010 Nissan Rogue vehicles, 2009 and 2010 Nissan Cube vehicles, and 2009 and 2010 Nissan Muranos.[6]

19. Nissan settled a class action lawsuit regarding defective CVTs in the 2013–2014 Nissan Pathfinder and Infiniti QX60/JX35 vehicles, owing to a defect in the Jatco CVT which caused vibration or judder. *Batista v. Nissan North America, Inc.*, 13-cv-24728 (S.D. Fla. 2014). As part of the settlement, Nissan again provided a warranty enhancement.

20. Nissan has not made Plaintiff and other Class members whole for the defective CVTs in the Subject Vehicles.

---

[4] https://www.youtube.com/watch?v=L6tZ6NNnY9M, http://nissannews.com/en-US/nissan/usa/channels/Altima-Sedan/videos/altima-video
[5] http://www.autonews.com/article/20131202/OEM10/312029972/nissan-presses-jatco-to-end-cvt-glitches
[6] http://www.nissanassist.com/ProgramDetails.php?menu=2

## CLASS ALLEGATIONS

21. This action is brought as a class action pursuant to Fed. R. Civ. P. 23, on behalf of a Class defined as follows:

> All persons and entities that purchased or leased a 2013 or 2014 Nissan Altima for end use and not for resale.

Excluded from the Class are: (i) Defendant and its officers and directors, agents, affiliates, subsidiaries, authorized distributors and dealers, (ii) all Class members who timely and validly request exclusion from the Class, and (iii) the Judge presiding over this action.

22. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

23. The members of the Class are so numerous that joinder of the Class members would be impracticable. On information and belief, Class members number in the thousands. The precise number of Class members and their addresses are presently unknown to Plaintiff, but may be ascertained from Defendant's records.

24. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

   a. whether Nissan engaged in the conduct alleged herein;

   b. whether Nissan omitted and misrepresented material facts to purchasers and lessees of model year 2013 and 2014 Altimas included a "smooth" CVT transmission;

   c. whether Nissan's omissions and misrepresentations regarding the Subject Vehicles were likely to mislead a reasonable consumer;

   d. whether Nissan breached warranties with Plaintiff and the other Class members when it produced, distributed, and sold the Subject Vehicles;

  e.  whether Plaintiff's and the other Class members' Subject Vehicles were worth less than as represented as a result of the conduct alleged herein;

  f.  whether Plaintiff and the other Class members have been damaged and, if so, the extent of such damages; and

  g.  whether Plaintiff and the other Class members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

25. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

26. Plaintiff's claims are typical of the claims of the other Class members because, among other things, Plaintiff and the other Class members were injured through the substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class members, and no defense is available to Defendant that is unique to Plaintiff.

27. Plaintiff is an adequate Class representative because he will fairly represent the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the resources to do so. Neither Plaintiff nor his counsel has any interest adverse or antagonistic to those of the Class.

28. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be

required to individually litigate their claims against Nissan, so it would be impracticable for Class members to individually seek redress for Nissan's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

### Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

29. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

30. Plaintiff is a "consumer" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(3).

31. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

32. The Nissan Altima is a "consumer product" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(1).

33. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

34. Defendant's representations as described herein that Subject Vehicles sold to Plaintiff and other Class members would feature "smooth" CVT operation are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

35. Defendant impliedly warranted that the Subject Vehicles are fit for ordinary use.

36. Defendant breached the warranties as described herein. Contrary to Defendant's representations, Plaintiff's and Class members' Altimas were subject to shuddering, jerking, hesitation, stalling, and premature failure. As such, Plaintiff's and the other Class members' Subject Vehicles did not function as promised.

37. The defect renders the vehicles unfit for ordinary use. The Subject Vehicles are uniformly equipped with a CVT that is prone to exhibit an unexpected shudder, jerk, hesitation, stalling, and premature failure. This makes the vehicles unfit and unreasonably dangerous for ordinary use.

38. Defendant knew of the defects in the Jatco CVTs included in the Subject Vehicles.

39. Defendant knew, or should have known, of its misrepresentations and omissions regarding the capabilities of the CVTs, yet proceeded with a coordinated advertising campaign through which Defendant misrepresented that the CVTs in the Subject Vehicles operated "smoothly" or "seamlessly."

40. Plaintiff and Class members were damaged as a result of Defendant's breach of warranty, because they received a product incapable of performing as the Defendant represented such product was capable of performing, and a product unfit for its ordinary use, rendering their vehicles less valuable than as represented.

## COUNT II

### Breach of Express Warranty

41. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

42. Plaintiff and other Class members formed a contract with Defendant at the time they purchased their Altimas. The terms of the contract include the promises and affirmations of fact and express warranties made by Defendant.

43. Defendant's 2013 New Vehicle Limited Warranty provides that "Nissan warrants all parts of your 2013 Nissan vehicle supplied by Nissan, except for those listed under the caption "WHAT IS NOT COVERED." No item under the section "WHAT IS NOT COVERED" describes the CVT.

44. Plaintiff's and the other Class members' Subject Vehicles did not perform as promised and contained a defective CVT transmission.

45. Defendant has actual knowledge that it breached express warranties with Plaintiff and the other Class members related to the Subject Vehicles.

46. Defendant breached the terms of the express warranties with Plaintiff and other Class members by not providing the Subject Vehicles with properly functioning transmissions.

47. Plaintiff sought repair of his vehicle during the express warranty period and the repair was unsuccessful.

48. As the foreseeable and actual result of Defendant's breach of express warranty, Plaintiff and the other Class members were damaged in an amount that is difference between the value of the Subject Vehicles if they had possessed the functional transmissions and performed as represented and the value of the vehicles they actually received.

## COUNT III

### Violation of the Illinois Consumer Fraud Act

49. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

50. The Illinois Consumer Fraud Act prohibits unfair and deceptive acts or practices in the conduct of trade or commerce. 815 Ill. Comp. Stat. 505/2.

51. Plaintiff and other Class members are consumers who purchased or leased a Subject Vehicle for end use and not for resale.

52. Defendant's conduct, as described above, in misrepresenting the Subject Vehicles' performance, while omitting the facts that Subject Vehicles contained defective transmissions, constitutes an unfair practice and was likely to mislead a reasonable consumer.

53. A reasonable consumer would consider the quality of the transmission in a Subject Vehicle, and defective nature of the CVT, to be important when making a decision whether to purchase a Subject Vehicle.

54. Nissan's practices offend public policy, are immoral, unethical, oppressive, and unscrupulous, caused substantial injury to consumers, and pose a risk to public safety.

55. Nissan's unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff and other Class members suffering actual damage on account of receiving a car that lacked the performance that Nissan represented the vehicles to have and contained defective CVTs.

56. Plaintiff and the other Class members paid for a car that was supposed to meet certain specifications. When they received a vehicle that did not conform to these specifications and which fell below the standards set by and described in Nissan's representations, Plaintiff and

the other Class members were damaged on account of receiving a car worth less than as represented.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A. Certifying the Class under Federal Rule of Civil Procedure 23 as requested herein;

B. Appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

C. Finding that Nissan engaged in the unlawful conduct as alleged herein;

D. Awarding Plaintiff and the other Class members actual, compensatory, and consequential damages;

E. Awarding Plaintiff and the other Class members statutory damages;

F. Awarding Plaintiff and the other Class members declaratory and injunctive relief;

G. Awarding Plaintiff and the other Class members restitution and disgorgement;

H. Awarding Plaintiff and the other Class members exemplary damages, should the finder of fact determine that Nissan acted with malice or oppression;

I. Awarding Plaintiff and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

J. Awarding Plaintiff and the other Class members reasonable attorneys' fees, costs, and expenses; and

K. Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on all claims so triable.

DATED: December 8, 2017 Respectfully submitted,

  /s/ Ben Barnow
Ben Barnow
Erich P. Schork
Anthony L. Parkhill
Jeffrey D. Blake
**BARNOW AND ASSOCIATES, P.C.**
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com
e.schork@barnowlaw.com
aparkhill@barnowlaw.com
j.blake@barnowlaw.com

Timothy G. Blood
Thomas J. O'Reardon
**BLOOD HURST & O'REARDON, LLP**
701 B Street, Suite 1700
San Diego, CA 92101
Tel: (619) 338-1100
Fax: (619) 338-1101
tblood@bholaw.com

*Plaintiff's Counsel*